Steve W. Berman (*Pro Hac Vice* forthcoming)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
F: (206) 623-0594

Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
T: (213) 330-7150
F: (213) 330-7152

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NATHANIEL BOOKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., a California Corporation,<br><br>Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.    PARTIES .................................................................................................... 4

    A.    Plaintiff .......................................................................................... 4

        1.    Plaintiff Nathaniel Booker ................................................... 5

    B.    Defendant ....................................................................................... 6

III.    JURISDICTION ......................................................................................... 12

IV.    VENUE ...................................................................................................... 13

V.    FACTUAL ALLEGATIONS ...................................................................... 13

    A.    Honda's History of Defective Fuel Delivery Systems ........................ 13

    B.    Honda Has Not Remedied the Fuel Pump Defect in Affected
        Vehicles ......................................................................................... 16

    C.    NHTSA Complaints Reveal That the Fuel Pump Defect
        Poses Serious Safety Risks ............................................................. 17

    D.    Honda Sells, Markets, and Advertises Honda and Lexus
        Brand Vehicles as Safe and Reliable ............................................... 25

    E.    Plaintiff and Class Members Would Not Have Purchased or
        Leased, or Would Have Paid Less for, Affected Vehicles
        Had They Known of the Fuel Pump Defect ..................................... 31

    F.    Honda Has Manipulated Its Warranty to Minimize Its
        Obligation to Fix the Fuel Pump Defect in Affected Vehicles ............. 31

    G.    Allegations Establishing Agency Relationship Between
        Manufacturer Honda and Honda Dealerships ................................... 33

VI.    TOLLING OF THE STATUTE OF LIMITATIONS ...................................... 36

    A.    Discovery Rule Tolling ................................................................... 36

    B.    Fraudulent Concealment Tolling ..................................................... 36

    C.    Estoppel ........................................................................................ 37

VII.    CHOICE OF LAW ALLEGATIONS ......................................................... 37

- i -

VIII.   CLASS ALLEGATIONS ................................................................... 37

      A.    Claims Brought on Behalf of the Nationwide Class .............................. 41

COUNT I  VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE
      MAGNUSON-MOSS WARRANTY ACT ....................................... 41

COUNT II  FRAUDULENT CONCEALMENT (BASED ON
      COMMON LAW) ............................................................................... 43

COUNT III  BREACH OF CONTRACT (COMMON LAW) .................................. 46

COUNT IV  VIOLATIONS OF THE CALIFORNIA CONSUMER
      LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) ................ 47

COUNT V  VIOLATIONS OF CALIFORNIA'S UNFAIR
      COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET
      SEQ.*) ................................................................................................... 50

COUNT VI  BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY (CAL. COM. CODE § 2314) .................................. 53

      B.    Claims Brought on Behalf of the Florida Subclass .............................. 54

COUNT VII  VIOLATIONS OF THE FLORIDA DECEPTIVE AND
      UNFAIR TRADE PRACTICES ACT ("FDUTPA") (FLA. STAT.
      ANN. § 501.201, *ET SEQ.*) ............................................................... 54

COUNT VIII  BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY (FLA. STAT. ANN. §§ 672.314 AND
      680.212) ............................................................................................... 56

COUNT IX  BREACH OF COVENANT OF GOOD FAITH AND FAIR
      DEALING (BASED ON FLORIDA STATE LAW) ....................................... 58

REQUEST FOR RELIEF ...................................................................................... 59

DEMAND FOR JURY TRIAL .............................................................................. 60

010928-12/1296829 V1

Plaintiff Nathaniel Booker, on behalf of himself and all others similarly situated (the "Class"), alleges the following based upon the investigation of counsel and information and belief as noted.

## I.    INTRODUCTION

1.     One of the most significant advancements in the internal combustion engine over the last 30 years has been the widespread adoption of fuel injection systems instead of carburetors to supply fuel to the engine. The fuel injection system uses fuel pumps to efficiently and effectively (when working correctly) manage the flow of fuel from the fuel tank to the engine in order to maintain operability and prevent engine stalling. The fuel delivery system is one of the most basic safety features in every modern car because it controls speed and keeps the engine running unless and until an operator wants to turn the engine off. If the fuel delivery system in a car is defective, then the car is unsafe to operate because it will not predictably respond to operator input to accelerate and it could stall or completely lose power while in motion. American Honda Motor Co., Inc. ("Honda") has sold and marketed the Affected Vehicles defined below with defective low-pressure fuel pumps that cause unpredictable acceleration and engine stalls and render the Affected Vehicles unsafe to operate.

2.     This lawsuit arises because Honda knew that the low-pressure fuel pumps in the vehicles identified as "Affected Vehicles" below contained a defect that causes systemic fuel system failures. Yet Honda refuses to repair or replace such defective systems and continues to sell—and require its customers to drive—its vehicles with the defective fuel delivery system, which could result in injuries or even deaths that could otherwise be avoided.

3.     Affected Vehicles include all Honda and Acura models that use the Denso low-pressure fuel pumps and fuel pump assemblies that begin with part number prefix 17045-. Honda has instituted at least *two* safety recalls in the United States

- 1 -

concerning the defective low-pressure fuel pumps, including one on January 29, 2019, when Honda submitted a recall report (the "2019 Safety Recall Report") to NHTSA voluntarily recalling nearly over 430,000 Honda and Acura vehicles.[1] That recall covered the following vehicles (collectively, the "2019 Recalled Vehicles)":

- 2016–2018 Acura MDX
- 2015–2019 Acura TLX
- 2015–2017 Honda Accord

4.     But Honda did not replace the faulty Denso pump as part of the 2019 recall. Instead, it updated the software on the 2019 Recalled Vehicles, which was cheaper than replacing the pump. This "fix" was plainly insufficient, as Honda has now acknowledged: on May 28, 2020, Honda submitted a Safety Recall Report to NHSTA, covering the *very same pump* at issue in the 2019 recall (with the 17045-prefix). But, even as Honda recognizes the safety hazard caused by the Denso pump, it has refused to recall and fix the 2019 Recalled Vehicles. Instead, it has limited the recall to the following vehicles, totaling approximately 136,000 vehicles in the United States (and nearly 1.4 million worldwide) (collectively, the "2020 Recalled Vehicles"):[2]

- 2018–2019 Acura NSX
- 2019 Acura RDX
- 2019 Acura RLX
- 2019 Acura RLS Sport Hybrid
- 2018–2019 Honda Accord
- 2018–2019 Honda Civic Hatchback
- 2018–2019 Honda Civic Type R

---

[1] A true and correct copy of the 2019 Safety Recall Report is attached as Exhibit A to this Complaint.

[2] A true and correct copy of the 2020 Safety Recall Report is attached as Exhibit B to this Complaint.

- 2 -

- 2019 Honda Fit
- 2018–2019 Honda HR-V
- 2019–2020 Honda Insight

5.      The Affected Vehicles in this case accordingly are all Acura and Honda vehicles with the Denso fuel pump with the part number prefix 17045-, including but not limited to the 2019 Recalled Vehicles and the 2020 Recalled Vehicles. If further investigation reveals that additional Honda and Acura vehicles contain the same defective low-pressure fuel pumps and assemblies, then the models identified as Affected Vehicles may be amended.

6.      The 2019 Safety Recall Report identified a dangerous defect in the low-pressure fuel pump, which can fail and cause the Affected Vehicles to unexpectedly stall, sputter, and cause engine shutdown. According to the 2019 Safety Recall Report, "[s]odium particulates contained in low quality fuels can adhere to certain internal components in the fuel pump, increasing electrical and mechanical resistance and reducing fuel pump performance. If a vehicle is operated in high ambient temperature, reduced fuel pump performance can restrict vehicle acceleration and/or cause an engine stall, which increases the risk of a crash."[3]

7.      The 2020 Safety Recall Report expanded on the nature of the defect of the low-pressure pump:[4]

> Affected vehicles may be equipped with a fuel pump module manufactured with low density impellers. If the surface of the lower density impeller is exposed to production solvent drying for longer periods of time, higher levels of surface cracking may occur. These cracks may lead to excessive fuel absorption, resulting in impeller deformation. ***Over time, if an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative***, which may cause illumination of the Malfunction Indicator Lamp in the instrument panel.

---

[3] Exhibit A, at 2.
[4] Exhibit B, at 6 (emphasis added).

- 3 -

8.      The 2020 Safety Recall Report also described the risk posed by the defect: "Fuel pump inoperability could prevent an engine from starting or stall an engine while driving, **increasing the risk of a crash**."[5]

9.      The Fuel Pump Defect endangers drivers, passengers, and other persons and property in the vicinity of an Affected Vehicle at any time that it is in motion. The Fuel Pump Defect thus renders the Affected Vehicles less safe and less valuable than consumers would reasonably expect and it makes them less safe and less valuable than the Affected Vehicles would be if Honda did not design and sell the Affected Vehicles with the Fuel Pump Defect.

10.     Plaintiff accordingly brings this class action complaint to recover on behalf of the Class all relief to which they are entitled, including but not limited to the recovery of the purchase price of their vehicles, compensation for overpayment and diminution in value of their vehicles, out-of-pocket and incidental expenses, and an injunction compelling Honda to replace or recall and fix the Affected Vehicles.

## II.      PARTIES

**A.      Plaintiff**

11.     Plaintiff and each and every Class member has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations associated with the Affected Vehicles, including but not limited to out-of-pocket loss and diminished value of the Affected Vehicles.

12.     Neither Honda, nor any of its agents, dealers, or other representatives, informed Plaintiff or Class members of the Fuel Pump Defect in the Affected Vehicles prior to purchase.

13.     Plaintiff received information about the characteristics, benefits, safety, and quality of the Affected Vehicles at the dealership and/or through Honda's extensive advertising concerning quality and safety, as intended by Honda. None of

---

[5] Exhibit B, at 7 (emphasis added).

- 4 -

the information Plaintiff received disclosed the Fuel Pump Defect prior to the vehicle's purchase.

### 1. Plaintiff Nathaniel Booker

14.     Plaintiff Nathaniel Booker is a resident of the State of Florida, domiciled in Tampa, Florida. On or about May 18, 2018, Plaintiff purchased a new 2019 Honda Accord (for the purpose of this section, the "Affected Vehicle") from a private seller in Tampa, Florida.

15.     Unknown to Plaintiff at the time the Affected Vehicle was purchased, it was equipped with a fuel delivery system that was defective and did not function safely, as advertised, or as intended by its design. Honda's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Affected Vehicle with the Fuel Pump Defect has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle.

16.     Plaintiff uses the Affected Vehicle for personal and family uses. Prior to purchasing the Affected Vehicle, Plaintiff reviewed the Monroney sticker that Honda placed on the window. The window sticker advertised the Affected Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details, and crash test ratings), and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the Affected Vehicle. The Monroney sticker did not disclose that the Affected Vehicle possessed any defects.

17.     Honda never told Plaintiff about the Fuel Pump Defect, so Plaintiff purchased his Affected Vehicle on the reasonable, but mistaken, belief that his Affected Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Honda vehicle because he believed Honda's persistent advertising messaging that its vehicles were of high quality, were safe, and were reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the

- 5 -

Affected Vehicle had a defect or the fact that Honda would be unable to repair the defect. Had Honda disclosed the Fuel Pump Defect, and the fact that Honda would require Plaintiff to pay out-of-pocket costs, including repair costs, Plaintiff would have received these disclosures, and he would not have purchased the Affected Vehicle or would have paid less for it.

**B.     Defendant**

18.     Defendant American Honda Motor Co., Inc. is a California corporation with its headquarters in Torrance, Los Angeles County, California.

19.     Honda manufactured, sold, and warranted the Affected Vehicles throughout the United States. Honda and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective fuel delivery system in the Affected Vehicles.

20.     In this Complaint, when reference is made to any act, deed or conduct of Defendant or Honda, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

21.     Honda sells cars in part via communications that it authorized its dealers to make about Honda vehicles, including the Defective Vehicles discussed herein. This includes authorizing Honda dealers to distribute brochures and other marketing and promotional material. Honda, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the Defective Vehicles.

22.     Authorized Honda dealers are Honda's agents, such that an opportunity to receive information from an authorized Honda dealership is an opportunity to receive information directly from Honda itself. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015). This agency relationship is established by the fact that, among other things: Honda's logo is displayed at authorized dealerships; Honda issues

- 6 -

technical bulletins and service instructions to dealerships detailing potential vehicle problems, and also relies on them to push software updates to customers' vehicles; Honda distributes various advertising and promotional material to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express warranty, Honda requires its customers to return to its authorized dealerships to perform warranty repairs.[6]

23.    Furthermore, Honda's relationship with its dealerships is governed by a dealership agreement[7] that imposes a number of reciprocal obligations on both parties. Among other things, it requires:

- that Honda offer to dealers "general and specialized product information and … provide field sales personnel to advise and counsel Dealer's sales organization on sales-related subjects such as merchandising, training, and sales management," (Dealership Agreement § 1.2.A), as well as "general and specialized service and parts training courses" (*id.* § 1.2.B);

- that Honda make available to dealers: (1) "sample copies of building layout plans or facility planning recommendations, including sales, service and parts space and the placement, installation and maintenance of recommended signs[;]" as well as, "from time to time," (2) "representatives … to counsel and advise Dealer and its personnel in connection with Dealer's planning and equipping the Dealership Premises" (*id.* § 1.3);

---

[6] *See* New Vehicle Limited Warranty (2018) ("NVLW"), available at https://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty _Basebook_AWL05251_FINAL.pdf (last visited June 10, 2020). For example, page 12 of both the 2018 and 2019 warranties states, in relevant part: "[u]nder normal circumstances, Honda will pay for warranty repairs only when they are performed at an authorized Honda repair facility."

[7] A copy of Honda's Automobile Dealer Sales and Service Agreement (Dealership Agreement), filed with the U.S. Securities and Exchange Commission, is attached as Exhibit C hereto. A true and correct copy is also available at https://www.sec.gov/ Archives/edgar/data/1019849/000095012402000556/k66280ex10-2_3.txt (last visited June 10, 2020).

- 7 -

- that Honda make available "such sales, service and parts manuals, brochures, special service tools and equipment and other data for Honda Products as American Honda deems necessary for Dealership Operations" (*id.* § 1.4);

- that Honda "agree to maintain a nationwide system of authorized dealerships of Honda Products" and that, "[i]n order that those authorized dealers may be assured of the benefits of comprehensive advertising of Honda Products," Honda agree to "establish and maintain general advertising programs in such manner and amount as it may deem appropriate and will make sales promotion and campaign materials available" to dealers (*id.* § 1.5);

- that dealers "promote and sell, at retail, Honda Products, and … promote and render service, whether or not under warranty, for those products within the Dealer's Primary Market Area" (*id.* § 3.1);

- that dealers "agree[] to establish and maintain an adequate and trained sales and customer relations organization," and "agree[] to establish and maintain a complete service and parts organization, including a qualified service manager and a qualified parts manager and a number of competent service and parts personnel adequate to care for the service obligations to be performed by Dealer under the Agreement" (*id.* § 3.3);

- that dealers "agree[] to acknowledge, investigate and resolve satisfactorily all complaints received from owners of Honda Products in a businesslike manner in order to secure and maintain the goodwill of the public, and to "promptly report[]" to Honda "[a]ny complaint received by Dealer which … cannot be readily remedied" (*id.* § 3.4);

- that dealers "will follow all reasonable directives, suggestions and policies of American Honda," and that "[a]ll written directives, suggestions and policies of American Honda contained in any of its bulletins or manuals, which are in

- 8 -

effect as of the date of the Agreement or are issued thereafter, will be deemed a part of the Agreement" (*id.* § 3.9);

- that dealers "perform any and all warranty, recall, product improvement or product update service in compliance with instructions and directives issued by American Honda, regardless of where the Honda Product involved was purchased," and that "to protect and maintain the goodwill and reputation of Honda Products and the Honda Trademarks," dealers "agree[] that [they] will not charge any customer for warranty service or any work done in connection with such warranty, recall, product improvement or update or any other service as to which Dealer is reimbursed by American Honda" (*id.* § 3.12);

- that dealers "understand[] and agree[] that the only warranties that will be applicable to Honda Products will be such written warranty or warranties as may be furnished by American Honda." The same provision states: "Except for its express liability under such written warranties, American Honda neither assumes nor authorizes any other person or party to assume for it any other obligation or liability in connection with any Honda Product or component thereof" (*id.* § 4.1);

- that dealers "agree[] that [they] will expressly incorporate any warranty furnished by American Honda with a Honda Automobile as a part of each order form or other contract for the sale of such Honda Automobile by Dealer to any buyer," "agree that [they] will deliver to the buyer of all Honda Products, at the time of delivery of such Honda Products, copies of such applicable warranties as may be furnished by American Honda," and "agree[] to abide by and implement in all other respects American Honda's warranty procedures in effect at the time of Dealer's sale" (*id.* § 4.2);

- 9 -

- that dealers "agree[] to develop and actively utilize programs for the advertisement and promotion of Honda Products and its servicing of such products." The provision further states: "Such programs will include the prominent display and use or demonstration of Honda Automobiles. Dealer further agrees to cooperate with all reasonable promotional programs developed by American Honda" (*id.* § 5.1);

- that dealers "agree[] that [they] will not advertise, promote or trade in Honda Products or the servicing thereof in such a manner as to injure or be detrimental to the goodwill and reputation of American Honda and the Honda Trademarks." The provision further states: "Dealer further agrees that it will not publish or otherwise disseminate any advertisement or announcement or use any form or media of advertising which is objectionable to American Honda. Dealer agrees to discontinue immediately any advertisement or form of advertising deemed objectionable upon request of American Honda" (*id.* § 5.2);

- that dealers, "[s]ubject to applicable federal, state or local ordinances, regulations and statutes, … agree[] to erect and maintain, at the Dealership Location, at Dealer's expense, authorized product and service signs of types required by American Honda, as well as such other authorized signs as are necessary to advertise the Dealership Operations effectively and as are required by American Honda" (*id.* § 5.3);

- that dealers "agree[] that American Honda has the exclusive right to and to control the use of the Honda Trademarks and but for the right and license granted by Paragraph 6.2 hereof to use and display the Honda Trademarks, Dealer would have no right to use the same" (*id.* § 6.1);

- that dealers are "granted the nonexclusive right and license to use and display the Honda Trademarks at the Dealership Premises." The provision

- 10 -

further states: "Such use or display is limited to that which is necessary in connection with the sale, offering for sale and servicing of Honda Products at retail at the Dealership Location. Dealer agrees that it will promptly discontinue the use of any of the Honda Trademarks or change the manner in which any of the Honda Trademarks is used when requested to do so by American Honda" (*id.* § 6.2);

- that dealers "agree[] to keep complete and current records regarding the sale and servicing of Honda Products and to prepare for American Honda such reports, based on those records, as American Honda may reasonably request." The provision further states: "In order that policies and procedures relating to the applications for reimbursement for warranty and other applicable work and for other credits or reimbursements may be applied uniformly to all authorized dealers, Dealer agrees to prepare, keep current and retain records in support of requests for reimbursement or credit in accordance with policies and procedures designated by American Honda" (*id.* § 7.3);

- that dealers "agree[] to permit, during reasonable business hours, American Honda, or its designee, to examine, audit, reproduce and take copies of all reports, accounts and records pertaining to the sale, servicing and inventorying of Honda Products, including, but not limited to, records in support of claims for reimbursement or credit from American Honda, and with the prior approval of Dealer, which approval will not be unreasonably withheld, to interview Dealer employees with respect thereto" (*id.* § 7.4);

- that the Dealership Agreement is terminated where a dealer fails "to provide adequate representation, promotion, sales or service, including warranty work" (*id.* § 9.4.N); and that, "not later than the effective date of the termination or expiration of the Agreement," dealers "will, at [their] sole

- 11 -

expense, discontinue any and all uses of any Honda Trademarks and any words, symbols and marks which are confusingly similar thereto; will remove all signs bearing any Honda Trademark and will destroy all stationery, repair orders, advertising and solicitation materials, and all other printed matter bearing any Honda Trademark or referring directly or indirectly to American Honda or Honda Products in any way which might make it appear to members of the public that Dealer is still an authorized dealer," including, but not be limited to, "discontinuing the use of a Honda Trademark as part of Dealer's business and corporate name." The provision continues: "Dealer will also deliver to American Honda, at American Honda's place of business, or to a person designated by American Honda, or will destroy the same upon request by American Honda, any and all technical or service literature, advertising and other printed material then in Dealer's possession which relates to Honda Products and which was acquired or obtained by Dealer from American Honda. Dealer will destroy any sign bearing a Honda Trademark which has not been repurchased by American Honda." (*id.* § 10.3).

### III.   JURISDICTION

24.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

25.    This Court has personal jurisdiction over Honda by virtue of its transacting and doing business in this District, including locating and operating its

010928-12/1296829 V1

headquarters in Torrance, California, in this District. Honda has purposefully availed itself of the benefits and protections of the Central District of California by continuously and systematically conducting substantial business in this judicial district. Honda has intentionally and purposefully sold, supplied, and distributed Affected Vehicles into the stream of commerce within California and throughout the United States.

26.    This Court has personal jurisdiction over Honda by virtue of its transacting and doing business in this District, including locating and operating its headquarters in this District.

## IV.    VENUE

27.    Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Honda licenses authorized dealers in this District, it advertises in this District, and it profits from its activities conducted within this District.

## V.    FACTUAL ALLEGATIONS

**A.    Honda's History of Defective Fuel Delivery Systems**

28.    Honda sources many of the electrical components in its vehicles from Denso Corporation, a Japanese auto parts supplier. As early as 2015, Denso had recognized that the low-pressure fuel pumps that it supplied to Honda and other manufacturers were prone to failure. In a patent application filed in 2016, Denso admitted that the composite (plastic) impellers in their low-pressure fuel pumps "may be swelled due to the fuel and water contained in the fuel, therefore a rotation of the impeller may be stopped when the impeller is swelled and comes in contact with the

- 13 -

[fuel pump] housing."[8] The defect described by the patent application is virtually the same as the Fuel Pump Defect at the heart of this case.

29.    Honda has even admitted knowing about the Fuel Pump Defect as early as January 2016, when it first "received the first report of an engine stall."[9] It further admits to beginning an investigation *more than two and a half years ago*. Honda stated that, during the August–September 2017 time period, and "[a]fter receipt of additional engine stall reports, Honda launched an investigation. Failed return parts were sent to the fuel pump supplier and the supplier was able to re-create the engine stalling condition with operating the fuel pump in 10 V mode."[10] Honda's investigation found that "fuel containing greater than one part per million of sodium could result in restricted vehicle acceleration and/or engine stall."[11]

30.    From July to November 2018, Honda reported that "[c]ontinued testing confirmed that fuel pump operating in 10 V mode allowed for the accumulation of sodium in the fuel pump, which resulted in increased mechanical and electrical resistance and reduction in fuel pump performance. Depending on ambient temperatures, reduced fuel pump performance can lead to restricted/rough acceleration and/or an engine stall."[12]

31.    In the 2020 Safety Recall Report, Honda admitted that it had been investigating the 2020 defect for more than a year prior to the May 2020 recall (emphasis added):[13]

---

[8] U.S. Patent Application No. 15767375, *Impeller for Fuel Pump*, (application date Oct. 26, 2016) (Denso Corporation, et al. applicants), available at https://patentscope. wipo.int/search/en/detail.jsf?docId=US231859533 (last visited June 10, 2020).

[9] Exhibit A, at 2.

[10] *Id.* at 3.

[11] *Id.* at 3.

[12] Exhibit B, at 3.

[13] *Id.* at 8-9.

February – May 2019

Honda received the first report of fuel pump module failure
from the Indian market and an investigation was launched.
After supplier analysis of failed parts returned from the field,
***it was confirmed that impeller swelling resulted in fuel
pump module failure***.

June – October 2019

The investigation was elevated to the global Honda quality
group for further handling. Honda hypothesized the impeller
swelling was related to part toughness and investigated
impeller density and clearance between the impeller and fuel
pump wall. Re-creation testing confirmed the primary
contributor to impeller swelling was the development of
surface cracks on low density impellers exposed to
production solvent drying for longer periods of time.

March 2020

Review of warranty data confirmed that vehicles equipped
with fuel pump modules in transit for a longer period prior to
vehicle assembly exhibited increased failure rates.

April 2020

Honda investigated the scope of vehicles installed with
suspect fuel pump modules containing lower density
impellers exposed to production solvent drying for longer
periods of time.

May 21, 2020

Honda determined that a defect related to motor vehicle
safety existed and decided to conduct a safety recall.

As of May 21, 2020, Honda has received 183 warranty
claims, 68 field reports, and no reports of injuries or crashes
related to this issue.

32.     On information and belief, even the large number of vehicles subjected to

the 2019 Safety Recall Report and the 2020 Safety Recall Report does not capture all

of the Affected Vehicles. It does not include all of the Honda and Acura vehicles that

were equipped with Denso low-pressure fuel pumps and fuel pump assemblies that

- 15 -

begin with part number prefix 17045-, the single common part in every model that Honda has recalled for the admitted fuel delivery system defect.

**B.    Honda Has Not Remedied the Fuel Pump Defect in Affected Vehicles**

33.    The Fuel Pump Defect in the Affected Vehicles is dangerous to drivers, vehicle occupants, and innocent bystanders. A vehicle that fails to accelerate when demanded, or stalls while in motion, is simply unsafe to operate.

34.    Honda has not fixed the recalled vehicles, or any other Affected Vehicles, despite its admission of the existing safety defect relating to the low-pressure fuel pump. Owners of Affected Vehicles are left to speculate as to whether there will be a repair or replacement of the Fuel Pump Defect, and, if so, when. Even the 2020 Safety Recall Report stated that owner notification dates were "to be determined,"[14] with no fixed date for notifying Class Members, much less fixing the actual defect.

35.    Rather than spend the money necessary to address the defect, or at least warn its customers that they have cars equipped with faulty fuel pumps, Honda has shifted the significant and serious risk of inoperable vehicles, accidents, injury and even death onto its customers.

36.    Honda has not recommended or advised that consumers stop driving Affected Vehicles pending repair or replacement of the Fuel Pump Defect. Even though it knows and admits that the Fuel Pump Defect could cause high-speed stalls and other dangerous conditions, Honda is unwilling to spend the money necessary to provide alternative transportation to its customers. Instead, it makes them chose between driving a car with a known dangerous defect, or driving nothing at all. On information and belief, hundreds of thousands of owners of Affected Vehicles have no idea that the low-pressure fuel pumps in their supposedly safe and reliable Honda and Acura vehicles have a known safety defect and have been the subject of a massive recall. To this day, Honda has not notified them of the 2020 safety recall.

---

[14] Exhibit B. at 9.

- 16 -

**C.     NHTSA Complaints Reveal That the Fuel Pump Defect Poses Serious Safety Risks**

37.     Affected Vehicle owner complaints to NHTSA describe harrowing traffic events and near misses, making perfectly clear that this is not a defect that Honda can continue to ignore.

38.     These complaints have gone back several years, further demonstrating that the defect affects more vehicles than those recalled by Honda. For example, on August 1, 2013, a 2013 Honda Accord owner reported to NHTSA as follows:

> THERE IS A HESITATION/JERK/SHUDDER WHEN ACCELERATING AT VARIOUS SPEEDS. *TR[15]

39.     On February 4, 2014, a 2013 Honda Accord owner reported to NHTSA as follows:

> SINCE I FIRST PURCHASED MY 2013 HONDA ACCORD, THE HONDA HAS INTERMITTENT HESITATIONS AFTER STOPPING AT TRAFFIC LIGHTS, STOP SIGNS, PARKING AND SO FORTH. FOR INSTANCE, FOR THE SECOND TIME IN THE LAST FIVE DAYS, I STOPPED, WENT INTO A STORE, RETURNED, CRANKED HONDA ACCORD, BACKED OUT, AND THE CAR WOULD NOT "GO."[16]

40.     On June 22, 2014, a 2014 Acura MDX owner reported to NHTSA as follows:

> WHILE TRYING TO ACCELERATE DURING A LEFT TURN, THE ENGINE COMPLETELY LOST POWER AND THE ACCELERATOR WOULD NOT WORK. ALL ENGINE WARNING LIGHTS CAME ON. WE NEARLY AVOIDED AN ACCIDENT BY COASTING INTO THE CENTER LANE. I HAD TO TURN OFF THE CAR AND RESTART IN ORDER TO GAIN THE ABILITY TO ACCELERATE AGAIN, BUT ALL THE WARNING LIGHTS REMAINED ON. DROVE IT TO THE DEALER, BUT THEY HAVE YET TO BE ABLE TO DETERMINE WHAT THE PROBLEM IS. THIS IS THE 3RD TIME THIS HAS HAPPENED - ALL DURING THE FIRST 5

---

[15] NHTSA ID No. 10533047.
[16] NHTSA ID No. 10562814.

- 17 -

1
2

MINUTES OF DRIVING DURING THE MORNING. THE
LAST INCIDENT COULD HAVE RESULTED IN A
SERIOUS CRASH. *TR[17]

3
4

41.    On November 28, 2014, a 2014 Honda CR-V owner reported to NHTSA as follows:

5
6
7
8
9
10
11
12

CAR HESITATES RANDOMLY FROM DEAD STOP.
STARTS OFF AT ABOUT 2 MPH AND DOES NOT
ACCELERATE UNTIL 5 TO 10 SECONDS EVEN
THOUGH YOU ARE PRESSING ON GAS PEDAL.
HONDA HAS NO EXPLANATION FOR THE RANDOM
OCCURRENCE. THIS HAS HAPPENED TO ME AT
LEAST 20 TIMES. DOES NOT SHOW UP ON
COMPUTER DIAGNOSTICS. REPLACED 2014 CR-V
AFTER 10 WEEKS WITH 2015 CR-V. 2015 MODEL HAS
DIFFERENT ISSUES. NO MORE HONDAS!!! TOOK A
BIG FINANCIAL HIT ON REPLACING A 2014 CR-V
AFTER 10 WEEKS WITH A 2015 CR-V. CAR TOO
DANGEROUS TO DRIVE. *TR[18]

13
14

42.    On December 1, 2014, a 2014 Honda Accord owner reported to NHTSA as follows:

15
16
17
18
19
20
21
22
23
24

SIMILAR TO NHTSA COMPLAINTS #10619205,
#10607907, #10655300, #10630708, AND #10628501.
DRIVING MY VEHICLE ON INTERSTATE, GOING
APPROXIMATELY 70 MPH. THE VEHICLE CAME TO
A LARGE INCLINE AND BEGAN ACCELERATING,
AND ALL OF A SUDDEN, THE ENTIRE VEHICLE
SHUDDERED VIOLENTLY AND LOST ALL
ACCELERATION, AND THE MALFUNCTION
INDICATOR LAMP CAME ON AND WAS BLINKING.
IT FELT LIKE THE VEHICLE HAD SHIFTED OUT OF
GEAR, AND IT COULD NOT GET BACK IN GEAR.
AFTER OVER 10 MINUTES, I RESTARTED THE
VEHICLE, AND THE LIGHT DID NOT COME BACK
ON. ALTHOUGH I COULD FEEL THAT PUSHING ON
THE GAS PEDAL DID NOT FEEL THE SAME, AND IT
FELT AS IF THE VEHICLE WAS HESITATING AND

25
26
27
28

[17] NHTSA ID No. 10605016.
[18] NHTSA ID No. 10661194.

- 18 -

STRUGGLING TO SWITCH GEARS UP AND ACCELERATE.[19]

43. On April 10, 2015, a 2015 Acura TLX owner reported to NHTSA as follows:

TL* THE CONTACT OWNS A 2015 ACURA TLX. THE CONTACT STATED THAT WHILE SLOWING TO SPEEDS BETWEEN 3-5 MPH, THE VEHICLE HESITATED TO ACCELERATE WHEN ENGAGING THE ACCELERATOR PEDAL. THE CONTACT INDICATED THAT THE FAILURE WAS INTERMITTENT AND OCCURRED ON SEVERAL OCCASIONS. THE CAUSE OF THE FAILURE WAS NOT DIAGNOSED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 200.[20]

44. On November 7, 2015, a 2014 Honda Accord owner reported to NHTSA as follows:

MY 2014 HONDA ACCORD COUPE HAS 33,900+ MILES AND FOR THE PAST YEAR, I HAVE HAD IT IN TO FOX HONDA IN GRAND RAPIDS FOUR TIMES FOR THE SAME PROBLEM. THE PROBLEM IS, THAT IT STUTTERS OFTEN WHEN ACCELERATING AND TWICE, THE ENGINE HAS STALLED OUT AND HAD TO BE RESTARTED.[21]

45. On March 9, 2016, a 2015 Honda Accord owner reported to NHTSA as follows:

WHEN YOU PRESSURE [sic.] ON THE ACCELERATOR PEDAL TO POWER THE VEHICLE (LIKE PULLING OUT INTO TRAFFIC OR CHANGING LANES IN TRAFFIC, THE CAR STALLS AND PUT YOU AT RISK OF GETTING INTO AN ACCIDENT. IT HAPPENS SITTING AT A TRAFFIC LIGHT OR DRIVING 55 MPH AND TRYING TO CHANGE LANES. DOES NOT

---

[19] NHTSA ID No. 10661422.
[20] NHTSA ID No. 10704864.
[21] NHTSA ID No. 10788979.

- 19 -

MATTER IF THE CAR IS WARM OR COLD, BUT OCCURS LESS WHEN COLD.[22]

46.    On July 30, 2016, a 2013 Honda Civic owner reported to NHSTA as follows:

VEHICLE HESITATES UNDER ACCELERATION. SOMETIMES ALMOST STALLING. I FEEL THIS IS NOT SAFE FOR MY SON AT TIMES. MERGING ETC.[23]

47.    On October 5, 2016, a 2015 Honda CR-V owner reported to NHTSA as follows:

VEHICLE WILL NOT RESPOND WHEN FOOT IS PLACED ON THE ACCELERATOR. WHEN ATTEMPTING TO MOVE THE CAR FORWARD FROM A STOP SIGN OR SIGNAL LIGHT THE VEHICLE WILL NOT RESPOND TO THE GAS PEDAL FOR UP TO 5 SECONDS. BASICALLY THERE IS A DELAY FROM WHEN THE GAS PEDAL IS PRESSED UNTIL THE VEHICLE RESPONDS. THIS HAS HAPPENED 5 TIMES IN PAST 6 TO 7 WEEKS. THIS ACTION HAS HAPPENED WHEN ATTEMPTING TO MOVE FROM A COMPLETE STOP OR WHEN THE VEHICLE IS MOVING AT A VERY SLOW SPEED. I ESCAPED A NEAR REAR END COLLISION WHEN I REMOVED MY FOOT FROM THE BRAKE, PRESSED ON THE GAS PEDAL AND THE CAR DID NOT RESPOND.[24]

48.    On January 17, 2017, a 2016 Honda CR-V owner reported to NHTSA as follows:

TL* THE CONTACT OWNS A 2016 HONDA CR-V. WHILE DRIVING VARIOUS SPEEDS, THE ACCELERATOR PEDAL WAS DEPRESSED. THE VEHICLE FAILED TO RESPOND WITHOUT WARNING. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE CONTACT STATED THAT THE FAILURE RECURRED SEVERAL TIMES. THE MANUFACTURER WAS MADE AWARE OF THE

---

[22] NHTSA ID No. 10854846.

[23] NHTSA ID No. 10891787.

[24] NHTSA ID No. 10779918.

- 20 -

FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 4,000. ...UPDATED 02/22/17 *BF[25]

49.     On February 14, 2017, a 2014 Honda Accord owner reported to NHTSA as follows:

TL* THE CONTACT OWNS A 2014 HONDA ACCORD. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE HESITATED AND THEN LUNGED FORWARD WHEN THE ACCELERATOR PEDAL WAS DEPRESSED THE DEALER COULD NOT DETERMINE THE CAUSE OF THE FAILURE. THE FAILURE RECURRED INTERMITTENTLY. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 14,000. THE VIN WAS NOT AVAILABLE. UPDATED 05/17/17*LJ[26]

50.     On March 27, 2017, a 2014 Acura MDX owner reported to NHTSA as follows:

VEHICLE HESITATES WITH ACCELERATION AND DOES NOT MAINTAIN CONSTANT SPEED. WITH ACCELERATION, THE VEHICLE HESITATES AND THEN LURCHES SUDDENLY. THE VEHICLE FAILS TO MAINTAIN A CONSTANT VELOCITY, ESPECIALLY GOING UP A SLIGHT GRADE, MOST NOTICEABLY AT 35MPH AND 45MPH.[27]

51.     On October 19, 2017, a 2014 Honda Civic owner reported to NHTSA as follows:

HESITATION WHEN PRESS ON ACCELERATOR. THEY IS VERY DANGEROUS WHEN GETTING OUT INTO TRAFFIC AND WHEN YOU PRESS ON ACCELERATOR THERE IS A LONG HESITATION. I HAVE REPORTED THIS TO HONDA SERVICE NUMEROUS TIMES AND THEY SAY THIS IS NORMAL AND CAN'T DUPLICATE THE ISSUE.[28]

---

[25] NHTSA ID No. 10945745.
[26] NHTSA ID No. 10954427.
[27] NHTSA ID No. 10968675.
[28] NHTSA ID No. 11034722.

52.    On September 5, 2018, a 2016 Honda CR-V owner reported to NHTSA as follows:

> HESITATION WHEN TRYING TO ACCELERATE. HAPPENS ANYTIME- STEP ON THE GAS AND IT TAKES A FEW SECONDS BEFORE THE ACCELERATION STARTS.[29]

53.    On October 15, 2018, a 2017 Honda CR-V owner reported to NHTSA as follows:

> I BOUGHT MY CR-V IN FEB 2017. SINCE 6TH OCT 2018 I HAVE BEGUN TO NOTICE HESITANCY PROBLEMS WITH ACCELERATION AFTER COMING TO A COMPLETE STOP AND IN SOME CASES THE ENGINE HAS ALSO STALLED. CAR WAS NOT IN ECON MODE, BEING DRIVEN ON 'D' MODE ON A CITY STREET. FACED SIMILAR ISSUE ON A HIGHWAY WHILE IN TRAFFIC. TODAY (15TH OCT) IT HAPPENED THRICE BACK TO BACK IN A 20 MINUTE DRIVE ON A CITY STREET.[30]

54.    On December 10, 2018, a 2018 Honda CR-V owner reported to NHTSA as follows:

> I WAS FIRST IN LINE IN THE LEFT LANE ON A CROSS OVER TO A ONE WAY STREET THAT GOES FROM RIGHT TO LEFT. I WAS AT A STOP WAITING FOR A TIME I COULD TURN AND TRY TO GET OVER 4 LANES OF TRAFFIC. THERE ARE 4 LANES ON THE ONE WAY STREET WHICH IS M-59 ALSO KNOW AS HALL ROAD AND I WAS GOING TO HAVE TO GO FAST AS I WAS GOING TO HAVE TO FIRST GET IN THE FAR LEFT LANE AND THEN CROSS OVER THE OTHER 3 LANES TO THE RIGHT AND EXIT AT A DRIVE TO WHERE I WAS TRYING TO GET TO. I KNEW IT WAS GOING TO TAKE MAXIMUM ACCELERATION AND A DEFT TOUCH TO GET OVER THERE SAFELY. AS I TRIED TO DO THIS AND AS I MADE MY FIRST MOVE INTO THE LEFT LANE, MY CAR HESITATED AND DID NOT GIVE ME THE FULL ACCELERATION I WAS EXPECTING. THIS CAUSED ALL THE TIMING I NEEDED TO MAKE THIS

[29] NHTSA ID No. 11124554.
[30] NHTSA ID No. 11140320.

- 22 -

MANEUVER SAFELY GO OUT THE WINDOW AND
PUT ME IN A PRECARIOUS SITUATION. I HAD TO
MAKE IN MY OPINION A VERY DANGEROUS
MOVEMENT TO THE RIGHT TO AVOID A CAR THAT
WAS CLOSING IN FAST FROM BEHIND BECAUSE I
COULD NOT GET THE SPEED UP. THIS IS THE FIRST
TIME THIS HAS HAPPENED ON THIS CAR. I WAS
ABLE TO GET WHERE I WANTED TO GO BUT NOW
HAVE NO CONFIDENCE IN THE RELIABILITY OF
TRYING TO MAKE THIS MANEUVER AGAIN.[31]

55.     On April 12, 2019, a 2017 Acura MDX owner reported to NHTSA as
follows:

DANGEROUS LOSS OF POWER WHILE
ACCELERATING ON THE HIGHWAY! THERE HAVE
BEEN THREE SEPARATE INCIDENCES OVER THE
LAST 2 YEARS. WHILE I WAS TRYING TO
ACCELERATE ON THE HIGHWAY, THE CAR
SEVERELY LOST POWER AND THE "CHECK
ENGINE" LIGHT STARTED FLASHING. THE CAR
SEEMED TO OPERATE NORMALLY AFTER TURNING
OFF AND ON THE ENGINE. THE DEALERSHIP
CLAIMED THAT THERE WAS NO COMPUTER
RECORDS OF PROBLEMS AFTER EACH INCIDENCE.
ACURA JUST ISSUED A RECALL OF THE FUEL PUMP
ON THIS MODEL YEAR MDX. HOWEVER, ACURA
AND THE LOCAL ACURA DEALERSHIP REFUSED
THE REPAIR DUE TO THE LACK OF COMPUTER
RECORD OF FAILURE.[32]

56.     On August 6, 2019, a 2016 Acura TLX owner reported to NHTSA as
follows:

TL* THE CONTACT OWNS A 2016 ACURA TLX. THE
CONTACT STATED THAT THE VEHICLE SUDDENLY
STALLED AND VARIOUS UNKNOWN INDICATORS
ILLUMINATED. THE VEHICLE WAS TAKEN TO
FRESNO ACURA (7250 N PALM AVE, FRESNO, CA
93711, (559) 431-3400) WHERE IT WAS DIAGNOSED
THAT THE FUEL PUMP FAILED. THE VEHICLE WAS
NOT REPAIRED AND THE MANUFACTURER WAS

---

[31] NHTSA ID No. 11160559.
[32] NHTSA ID No. 11195860.

NOT CONTACTED. THE FAILURE MILEAGE WAS 86,000.[33]

57.    On November 7, 2019, a 2016 Acura TLX owner reported to NHTSA as follows:

FROM A STOPPED POSITION, MOVING FORWARD MY VEHICLE HESITATED AND DECREASED IN POWER AND THE GAS PEDAL DID NOT HELP MOVING THE VEHICLE FORWARD. THIS HAPPENED IN THE MIDDLE OF THE INTERSECTION FOR SEVERAL SECONDS 10-15 BEFORE THE VEHICLE STARTED MOVING FORWARD AGAIN.[34]

58.    The above complaints are just a small subset of the complaints submitted to NHTSA for sudden stalls and pump failures in the Affected Vehicles. The safety implications are obvious, as illustrated by the events described above and Honda's eventual admission by its decision to issue a safety recall.

59.    It cannot reasonably be questioned that Honda is now, and was long before it first began selling Affected Vehicles, fully aware of the Fuel Pump Defect in the Affected Vehicles. Honda has acquired that knowledge through at least: (1) NHTSA complaints; (2) warranty claims; (3) non-warranty repair records; (4) testing it claims to undertake in the development of new models; and (5) customer complaints to Honda and its dealers.

60.    Like all vehicle manufacturers, Honda monitors consumer reports and sentiments about its products that appear on social media, blogs, review sites, enthusiast sites, and other internet resources. Honda has toll-free numbers and email and other communication systems that are devoted to obtaining information (and complaints) from consumers about their products. Honda has certainly received numerous complaints about the Fuel Pump Defect in Affected Vehicles, as evidenced,

---

[33] NHTSA ID No. 11242131.
[34] NHTSA ID No. 11278642.

- 24 -

in part, by the NHTSA complaints that expressly indicate contact with Honda directly and its dealers.

61.    Honda also receives technical information and reports from its dealers and service centers concerning warranty repairs, requests for warranty coverage, and safety complaints from vehicle owners.

**D.    Honda Sells, Markets, and Advertises Honda and Lexus Brand Vehicles as Safe and Reliable**

62.    Honda spends hundreds of millions of dollars on advertising and focuses that advertising intently on claims of safety and reliability. Honda knows and intends that consumers, including purchasers of Affected Vehicles, will buy their vehicles because they believe them to be safe and reliable.

63.    The image below is an example of Honda's consistent safety and reliability messaging:[35]



---

[35] https://www.honda.com/safety (last visited June 10, 2020).

- 25 -

64.    Honda has consistently represented to Affected Vehicle owners that it remains committed to safety and security, as illustrated in the screenshots below:[36]

---

[36] **2013:** http://web.archive.org/web/20130518073455/http://corporate.honda.com/safety/ (last visited June 10, 2020); **2015:** http://web.archive.org/web/20150322031420/http://corporate.honda.com/safety/ (last visited June 10, 2020); **2019:** http://web.archive.org/web/20191231113751/https://www.honda.com/safety (last visited June 10, 2020).

- 26 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



010928-12/1296829 V1

65.    Honda made similar representations throughout the class period. Below is a screenshot from a 2015 Honda Accord:[37]



66.    Below is a screenshot from a 2015 Honda Civic sales brochure:[38]

---

[37] https://cdn.dealereprocess.net/cdn/brochures/honda/2015-accord.pdf (last visited June 10, 2020).

[38] https://cdn.dealereprocess.net/cdn/brochures/honda/2015-civic.pdf (last visited June 10, 2020).



67.    Below is a screenshot from a 2015 Acura MDX sales brochure:[39]



[39] https://cdn.dealereprocess.org/cdn/brochures/acura/2015-mdx.pdf (last visited June 10, 2020).

- 29 -

68.    Below is a screenshot of a 2018 Honda Accord sales brochure:[40]



69.    Below is a screenshot of a 2018 Acura MDX sales brochure:[41]



---

[40] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2018/Accord-Sedan/brochure/MY18-Accord-Brochure-Model-Site.pdf (last visited June 10, 2020).

[41] https://cdn.dealereprocess.org/cdn/brochures/acura/2018-mdx.pdf (last visited June 10, 2020).

- 30 -

70.     As demonstrated, Honda employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability, without ever disclosing the Fuel Pump Defect.

**E.     Plaintiff and Class Members Would Not Have Purchased or Leased, or Would Have Paid Less for, Affected Vehicles Had They Known of the Fuel Pump Defect**

71.     No owner or lessee of an Affected Vehicle would have purchased their vehicle, or at least would have paid less for their Affected Vehicle, had they known that the fuel delivery system might unexpectedly fail, or had they known that Honda would fail to fix a known defect in the low-pressure fuel pump.

72.     As a result of the Fuel Pump Defect in Affected Vehicles and the costs of repairs required to ameliorate it, Plaintiff and all owners of Affected Vehicles (the "Class") have suffered injury in fact, incurred damages, and have suffered harm as a result of Honda's acts and omissions. Plaintiff and Class members seek remedies under the consumer protection statutes of the states in which they reside and/or purchased their Affected Vehicles, and also seek recovery for Honda's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

73.     Plaintiff and each Class member suffered injury as they purchased their Affected Vehicle under the express and implied warranties that their vehicles would operate safely throughout the useful life of such vehicles. A vehicle containing the Fuel Pump Defect does not operate as warranted and for its intended purpose because it does not operate safely or reliably. In addition, an Affected Vehicle is worth less than a correctly operating/non-faulty Affected Vehicle.

**F.     Honda Has Manipulated Its Warranty to Minimize Its Obligation to Fix the Fuel Pump Defect in Affected Vehicles**

74.     In connection with the sale of new vehicles, including the Affected Vehicles, Honda provides a New Vehicle Limited Warranty ("NVLW") for the lesser

- 31 -

of three years or 36,000 miles. Its powertrain warranty is for five years, or 60,000 miles, whichever comes first.

75.    The NVLW states:

> Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book. Warranty Coverage Honda will repair or replace any part that is defective in material or workmanship under normal use. See Proper Operation on page 35.

> All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

76.    For the Acura-branded Affected Vehicles, Honda offered a written express Limited Warranty of four years or 50,000 miles. Honda also offered a six-year 70,000-mile powertrain warranty.

77.    In order to obtain repairs under the NVLW, owners and lessees of covered vehicles are told by Honda to present their vehicles to certified Honda service centers, which are generally housed at Honda dealerships.

78.    Honda is not honoring the plain language of its warranty agreement. Even when owners of Affected Vehicles have presented their cars to Honda service centers and complained of issues traceable to the Fuel Pump Defect, Honda has: (1) failed to notify them of the Fuel Pump Defect in their Affected Vehicles; and/or (2) notified them of the recall associated with the Fuel Pump Defect, but refused to repair the defect or provide alternative/replacement transportation that is not defective. Likewise, Affected Vehicle owners who do not complain of issues relating to the Fuel Pump Defect are never informed of the Fuel Pump Defect in Affected Vehicles, and are never offered a repair. Honda has also failed to notify Affected Vehicle owners of the 2020 recall.

### G.    Allegations Establishing Agency Relationship Between Manufacturer Honda and Honda Dealerships.

79.    Upon information and belief, Honda impliedly or expressly acknowledged that Honda-authorized dealerships are its sales agents, the dealers have accepted that undertaking, Honda has the ability to control authorized Honda dealers, and Honda acts as the principal in that relationship, as is shown by the following:

i.    Manufacturer Honda can terminate the relationship with its dealers at will;

ii.    The relationships are indefinite;

iii.    Manufacturer Honda is in the business of selling vehicles as are its dealers;

iv.    Manufacturer Honda provides tools and resources for Honda dealers to sell vehicles;

v.    Manufacturer Honda supervises its dealers regularly;

vi.    Without Manufacturer Honda, the relevant Honda dealers would not exist;

vii.    Manufacturer Honda requires the following of its dealers:

 a.    Reporting of sales;

 b.    Computer network connection with Manufacturer Honda;

 c.    Training of dealers' sales and technical personnel;

 d.    Use of Manufacturer Honda-supplied computer software;

 e.    Participation in Manufacturer Honda's training programs;

 f.    Establishment and maintenance of service departments in Honda dealerships;

 g.    Certify Honda pre-owned vehicles;

 h.    Reporting to Manufacturer Honda with respect to the vehicle delivery, including reporting Class members' names, addresses, preferred titles, primary and business phone numbers, e-mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable, vehicles' odometer readings, extended

- 33 -

service contract sale designations, if any, and names of delivering dealership employees; and

  i. Displaying Manufacturer Honda logos on signs, literature, products, and brochures within Honda dealerships.

viii. Dealerships bind Manufacturer Honda with respect to:

  a. Warranty repairs on the vehicles the dealers sell; and

  b. Issuing service contracts administered by Manufacturer Honda.

ix. Manufacturer Honda further exercises control over its dealers with respect to:

  a. Financial incentives given to Honda dealer employees;

  b. Locations of dealers;

  c. Testing and certification of dealership personnel to ensure compliance with Manufacturer Honda's policies and procedures; and

  d. Customer satisfaction surveys, pursuant to which Manufacturer Honda allocates the number of Honda cars to each dealer, thereby directly controlling dealership profits.

x. Honda dealers sell Honda vehicles on Manufacturer Honda's behalf, pursuant to a "floor plan," and Manufacturer Honda does not receive payment for its cars until the dealerships sell them.

xi. Dealerships bear Honda's brand names, use Honda's logos in advertising and on warranty repair orders, post Honda-brand signs for the public to see, and enjoy a franchise to sell Manufacturer Honda's products, including the Affected Vehicles.

xii. Manufacturer Honda requires Honda dealers to follow the rules and policies of Manufacturer Honda in conducting all aspects of dealer business, including the delivery of Manufacturer Honda's warranties described above, and the servicing of defective vehicles such as the Affected Vehicles.

xiii. Manufacturer Honda requires its dealers to post Honda's brand names, logos, and signs at dealer locations, including dealer service departments, and to identify themselves and to the public as authorized Honda dealers and servicing outlets for Manufacturer Honda cars.

- 34 -

xiv.   Manufacturer Honda requires its dealers to use service and repair forms containing Manufacturer Honda's brand names and logos.

xv.   Manufacturer Honda requires Honda dealers to perform Manufacturer Honda's warranty diagnoses and repairs, and to do the diagnoses and repairs according to the procedures and policies set forth in writing by Manufacturer Honda.

xvi.   Manufacturer Honda requires Honda dealers to use parts and tools either provided by Manufacturer Honda, or approved by Manufacturer Honda, and to inform Honda when dealers discover that unauthorized parts have been installed on one of Manufacturer Honda's vehicles.

xvii.   Manufacturer Honda requires dealers' service and repair employees to be trained by Honda in the methods of repair of Honda-brand vehicles.

xviii.   Manufacturer Honda audits Honda dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

xix.   Manufacturer Honda requires its dealers to provide Honda with monthly statements and records pertaining, in part, to dealers' sales and servicing of Manufacturer Honda's vehicles.

xx.   Manufacturer Honda provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

xxi.   Manufacturer Honda provides its dealers with specially trained service and repair consultants with whom dealers are required by Manufacturer Honda to consult when dealers are unable to correct a vehicle defect on their own.

xxii.   Manufacturer Honda requires Honda-brand vehicle owners to go to authorized Honda dealers to obtain servicing under Honda warranties; and

xxiii.   Honda dealers are required to notify Manufacturer Honda whenever a car is sold or put into warranty service.

- 35 -

# VI.   TOLLING OF THE STATUTE OF LIMITATIONS

## A.   Discovery Rule Tolling

80.   Class members had no way of knowing about Honda's deception with respect to the Fuel Pump Defect in the Affected Vehicles.

81.   Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Honda was concealing the Fuel Pump Defect in the Affected Vehicles and misrepresenting the safety, quality, and reliability of the Affected Vehicles.

82.   Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Honda did not report information within their knowledge to federal and state authorities, the dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Honda had concealed information about the true nature of the Fuel Pump Defect in the Affected Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiff and other Class members have disclosed that Honda valued profits over the safety of its customers, their friends and family, and innocent bystanders.

83.   For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted herein.

## B.   Fraudulent Concealment Tolling

84.   All applicable statutes of limitation have also been tolled by Honda's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

85.   Instead of disclosing the existence of the Fuel Pump Defect, Honda falsely represented that the Affected Vehicles were safe, dependable, reliable, and of high quality.

- 36 -

## C.    Estoppel

86.    Honda was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the fuel delivery system in the Affected Vehicles.

87.    Honda knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fuel delivery system in the Affected Vehicles.

88.    Based on the foregoing, Honda is estopped from relying on any statutes of limitations in defense of this action.

## VII.    CHOICE OF LAW ALLEGATIONS

89.    Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California's choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

90.    Because Honda is headquartered in California, and made all decisions related to these claims in this State, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action compared to any other state. Application of California law to Honda and the claims of all Class members would accordingly not be arbitrary or unfair.

## VIII.    CLASS ALLEGATIONS

91.    Plaintiff brings this action on behalf of himself and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses (collectively, the "Classes"):

**The Nationwide Class**

> All persons or entities in the United States who owned and/or leased an Acura or Honda vehicle with the Denso fuel pump with the part number prefix 17045-, including but not

- 37 -

limited to the 2019 Recalled Vehicles and the 2020 Recalled Vehicles.

**The Florida Subclass**

All persons or entities in the state of Florida who owned and/or leased an Acura or Honda vehicle with the Denso fuel pump with the part number prefix 17045-, including but not limited to the 2019 Recalled Vehicles and the 2020 Recalled Vehicles.

92.     Excluded from the Class are individuals who have personal injury claims resulting from the fuel delivery system in the Affected Vehicles. Also excluded from the Class is Honda and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

93.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

94.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

95.     **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes—based on publicly available sales data for the Affected Vehicles—that there are millions of members of the Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Honda's books and records, as well as the recall reports that Honda has submitted to NHTSA. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

- 38 -

96.     **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether Honda engaged in the conduct alleged herein;

b.     Whether Honda designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Affected Vehicles into the stream of commerce in the United States;

c.     Whether the Affected Vehicles contain a defect in their fuel delivery system and if so, whether it is a safety defect;

d.     Whether Honda knew about the defect in the fuel delivery system of the Affected Vehicles and, if so, how long Honda has known;

e.     When Honda discovered the Fuel Pump Defect in the Affected Vehicles, and what, if anything, they did in response;

f.     Whether Honda has sought to minimize their warranty expenses by refusing to repair the Fuel Pump Defect in the Affected Vehicles;

g.     Whether Honda's breach of contract and fraudulent concealment as asserted herein;

h.     Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i.     Whether Plaintiff experienced out-of-pocket losses from replacing parts as a result of the Fuel Pump Defect, and if so, how much; and

j.     Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

97.     **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Honda's wrongful conduct as described above.

010928-12/1296829 V1

98.    **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

99.    **Declaratory Relief**: Federal Rule of Civil Procedure 23(b)(2): Honda has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate declaratory relief, with respect to each Class as a whole.

100.    **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Honda, so it would be impracticable for the members of the Classes to individually seek redress for Honda's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

010928-12/1296829 V1

**A.    Claims Brought on Behalf of the Nationwide Class**

## COUNT I

### VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS WARRANTY ACT

101.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

102.    This claim is brought on behalf of the Nationwide Class.

103.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

104.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

105.    The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

106.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

107.    Honda's NVLW is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Affected Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

108.    Honda breached these warranties, as described in more detail above. Without limitation, the Affected Vehicles are equipped with a defective fuel delivery system that fails to function as expected, and can cause loss of power and stalls, leading to vehicle accidents and collisions. The Affected Vehicles share a common design defect in that the fuel delivery system fails to operate as represented by Honda.

109.    Plaintiff and the other Class members have had sufficient direct dealings with either Honda or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Honda on one hand, and Plaintiff and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of

- 41 -

contracts between Honda and its dealers, and specifically, of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

110.   Affording Honda a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

111.   At the time of sale or lease of each Affected Vehicle, Honda knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Affected Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Honda has expressly admitted the existence of the Fuel Pump Defect and that it is a safety defect, but notwithstanding its recall of millions of Affected Vehicles, it has not offered a fix or indicated that a fix is available. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

112.   Plaintiff and the other Class members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because Honda is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Affected Vehicles by retaining them.

113.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

- 42 -

114.  Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the Affected Vehicles, in an amount to be proven at trial.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON COMMON LAW)

115.  Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

116.  Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

117.  Honda intentionally concealed that the Affected Vehicles are defective.

118.  Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each Affected Vehicle and on its website, that the Affected Vehicles it was selling had no significant defects, that the Affected Vehicles were safe, reliable, and of high quality, and would perform and operate in a safe manner.

119.  Honda knew about the defect in the Affected Vehicles when these representations were made.

120.  The Affected Vehicles purchased by Plaintiff and the other Class members contained defective fuel delivery systems.

121.  Honda had a duty to disclose that the Affected Vehicles contained a fundamental defect as alleged herein, because Plaintiff and the other Class members relied on Honda's material representations.

122.  As alleged herein, at all relevant times, Honda has held out the Affected Vehicles to be free from defects such as the Fuel Pump Defect. Honda touted and continue to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the Affected Vehicles deceptive.

- 43 -

123.  The truth about the defective Affected Vehicles was known only to Honda; Plaintiff and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiff and Class members.

124.  Plaintiff and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own. Rather, Honda intended to deceive Plaintiff and Class members by concealing the true facts about the Affected Vehicles.

125.  Honda's false representations and omissions were material to consumers because they concerned safety of the Affected Vehicle, which played a significant role in the value of the Affected Vehicle.

126.  Honda had a duty to disclose the Fuel Pump Defect and violations with respect to the Affected Vehicle because they concerned the safety of the Affected Vehicles, the details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

127.  Honda also had a duty to disclose because it made general affirmative representations about the safety and reliability of the Affected Vehicles, without telling consumers that the Affected Vehicles had a fundamental system defect that would affect the safety, quality, and reliability of the Affected Vehicle.

128.  Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Fuel Pump Defect as set forth herein. These omitted and concealed facts were material because they directly impact the safety and value of the Affected Vehicles purchased by Plaintiff and Class members.

- 44 -

129.    Honda has still not made full and adequate disclosures and continue to defraud Plaintiff and Class members by concealing material information regarding the defect in the Affected Vehicles.

130.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for the Affected Vehicles with the Fuel Pump Defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Honda were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

131.    Because of the concealment and/or suppression of facts, Plaintiff and Class members sustained damage because they own Affected Vehicles that are diminished in value as a result of Honda's concealment of the true safety and quality of the Affected Vehicles. Had Plaintiff and Class members been aware of the Fuel Pump Defect, and Honda's disregard for the truth, Plaintiff and Class members would have paid less for their Affected Vehicles or would not have purchased them at all.

132.    The value of Plaintiff's and Class members' Affected Vehicles have diminished as a result of Honda's fraudulent concealment of the Fuel Pump Defect, which has made any reasonable consumer reluctant to purchase an Affected Vehicle, let alone pay what otherwise would have been fair market value for the Affected Vehicle.

133.    Accordingly, Honda is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

134.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Honda made to them, in order to enrich

- 45 -

Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF CONTRACT
(Common Law)

135.    Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

136.    Plaintiff asserts this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Florida Subclass.

137.    Honda's misrepresentations and omissions alleged herein, including but not limited to, Honda's concealment and suppression of material facts concerning the Affected Vehicles, including the reliability and durability of the fuel delivery system, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.

138.    Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased different vehicles that did not contain the Defective Fuel Pump. Accordingly, Plaintiff and other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

139.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Honda and the purchaser or lessee. Honda breached these contracts by selling or leasing to Plaintiff and the other Class members defective Affected Vehicle and by misrepresenting or failing to disclose material facts concerning the safety, durability, performance, and quality of the Affected Vehicles.

140.    As a direct and proximate result of Honda's breach of contract, Plaintiff and other Class members have been damaged in an amount to be proven at trial, which

- 46 -

shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

141.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

142.   Plaintiff brings this claim on behalf of the Nationwide Class.

143.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

144.   The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

145.   Plaintiff and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

146.   As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and reliability of the Affected Vehicles.

147.   In purchasing the Affected Vehicles, Plaintiff and other Class members were deceived by Honda's failure to disclose its knowledge of the defect in the Affected Vehicles.

148.   Honda's conduct as described herein was and is in violation of the CLRA. Honda's conduct violates at least the following enumerated CLRA provisions:

  i.   Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

- 47 -

ii.   Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

iii.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

iv.   Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

149.   Honda intentionally and knowingly misrepresented and omitted material facts regarding the Affected Vehicles, specifically regarding the Fuel Pump Defect, and its misrepresentations that the Affected Vehicles were safe, reliable, and of high quality, and would operate and perform in a safe manner.

150.   In purchasing the Affected Vehicles, Plaintiff and other Class members were deceived by Honda's failure to disclose its knowledge of Fuel Pump Defect.

151.   Plaintiff and other Class members had no way of knowing Honda's representations were false, misleading, and incomplete or knowing the true nature of the Affected Vehicles.

152.   As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its Affected Vehicles. Plaintiff and other Class members did not, and could not, unravel Honda's deception on their own.

153.   Honda knew or should have known its conduct violated the CLRA.

154.   Honda owed Plaintiff and the Class members a duty to disclose the truth about its faulty Affected Vehicles because Honda:

i.    Possessed exclusive knowledge of the defect in the Affected Vehicles;

ii.   Intentionally concealed the foregoing from Plaintiff and Class members; and/or

- 48 -

   iii. Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the Affected Vehicles was defective.

155. Honda had a duty to disclose that the Affected Vehicles contained a defective Denso pump, because Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions regarding the features of the Affected Vehicles.

156. Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Affected Vehicles and suffered harm as alleged herein.

157. Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs, including overpaying for their Affected Vehicles that have suffered a diminution in value.

158. Honda's violations cause continuing injuries to Plaintiff and other Class members.

159. Honda's unlawful acts and practices complained of herein affect the public interest.

160. Honda fully knew about the Fuel Pump Defect, and that the Affected Vehicles was materially compromised by such defects.

161. The facts concealed and omitted by Honda from Plaintiff and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Affected Vehicle or pay a lower price. Had Plaintiff and the other Class members known about the defective nature of the Affected Vehicles, they would not have purchased the Affected Vehicles or would not have paid the prices they paid.

- 49 -

162.   Plaintiff's and the other Class members' injuries were proximately caused by Honda's unlawful and deceptive business practices.

163.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the defect in the Affected Vehicles.

164.   Plaintiff sent out a notice letter on June 10, 2020.

165.   If Honda does not rectify its conduct within 30 days, Plaintiff will amend this complaint to request the following forms of relief pursuant to Cal. Civ. Code § 1782:

i.     Actual damages;

ii.    Restitution of money to Plaintiff and Class members, and the general public;

iii.   Punitive damages;

iv.    An additional award of up to $5,000 to each Plaintiff and any Class member who is a "senior citizen";

v.     Attorneys' fees and costs; and

vi.    Other relief that this Court deems proper.

**COUNT V**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

166.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

167.   Plaintiff brings this claim on behalf of the Nationwide Class.

168.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

- 50 -

169.   Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL in at least the following ways:

     i.    By failing to disclose the Fuel Pump Defect in the Affected Vehicles;

    ii.    By selling Affected Vehicles s that suffer from such defects;

   iii.    By knowingly and intentionally concealing from Plaintiff and the other Class members that the Affected Vehicles was defective;

   iv.    By marketing Affected Vehicles as safe, reliable, and of high quality, and would perform and operate in a safe manner; and

    v.    By violating other California laws, including California consumer protection laws.

170.   Honda intentionally and knowingly misrepresented and omitted material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the other Class members.

171.   In purchasing the Affected Vehicles, Plaintiff and the other Class members were deceived by Honda's failure to disclose the Fuel Pump Defect.

172.   Plaintiff and the other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its Affected Vehicles. Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.

173.   Honda knew or should have known that its conduct violated the UCL.

174.   Honda owed Plaintiff and the other Class members a duty to disclose the truth about its Affected Vehicles because Honda:

     i.    Possessed exclusive knowledge of the defect in the Affected Vehicles;

- 51 -

ii.    Intentionally concealed the foregoing from Plaintiff and the other Class members; and/or

iii.    Made incomplete representations by failing to warn the public or to publicly admit that the Affected Vehicles was defective.

175.    Honda had a duty to disclose that the Affected Vehicles were fundamentally flawed as described herein, because Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions.

176.    Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Affected Vehicles and suffered harm as alleged herein.

177.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs, including overpaying for their Affected Vehicles that have suffered a diminution in value.

178.    Honda's violations cause continuing injuries to Plaintiff and Class members.

179.    Honda's unlawful acts and practices complained of herein affect the public interest.

180.    Honda's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased Affected Vehicles, would not have purchased the Affected Vehicles at the prices they paid, and/or would have purchased alternative vehicles that did not contain the Fuel Pump Defect because the Affected Vehicles failed to live up to reasonable consumer expectations and industry standards.

181.   Accordingly, Plaintiff and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

182.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and Class members any money Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

**COUNT VI**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

183.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

184.   Plaintiff brings this claim on behalf of the Nationwide Class.

185.   Honda is and was at all relevant times a merchant with respect to the Affected Vehicles under Cal. Com. Code § 2104.

186.   A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

187.   Honda marketed the Affected Vehicles as safe, reliable, and of high quality that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Class members' decisions to purchase the Affected Vehicles.

188.   Plaintiff and other Class members purchased the Affected Vehicles from Honda, or through Honda's authorized agents for retail sales. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles.

189.   Honda knew or had reason to know of the specific use for which the Affected Vehicles were purchased.

- 53 -

190.   Because of the Fuel Pump Defect, the Affected Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

191.   Honda knew about the defect in the Affected Vehicles, allowing Honda to cure its breach of its warranty if it chose.

192.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the Fuel Pump Defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members. Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the defect at the time of sale.

193.   Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

194.   Accordingly, Honda is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

**B.     Claims Brought on Behalf of the Florida Subclass**

### COUNT VII

**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")
(FLA. STAT. ANN. § 501.201, *ET SEQ.*)**

195.   Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

- 54 -

196.   Plaintiff alternatively brings this Count on behalf of himself and all similarly situated residents of the state of Florida for violations of Florida's Deceptive and Unfair Trade Practices Act.

197.   Plaintiff and other Florida Subclass members who purchased their vehicles new are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.203(7).

198.   Honda engaged in "trade or commerce" within the meaning of Fla. Stat. Ann. § 501.203(8).

199.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1). Honda participated in unfair and deceptive trade practices that violated the FDUTPA as described herein. In the course of its business, Honda concealed and suppressed material facts concerning the Fuel Pump Defect. Honda falsely represented the quality of the Affected Vehicles and omitted material facts regarding the fuel pump, as well as the durability and overall value of the Affected Vehicles, for the purpose of inducing Plaintiff and other Florida Subclass members to purchase the Affected Vehicles, and to increase Honda's revenue and profits.

200.   The facts concealed and omitted by Honda were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price. Had Plaintiff and other Florida Subclass members known of the Fuel Pump Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

201.   Honda's conduct proximately caused injuries to Plaintiff and the other Florida Subclass members.

202.   Plaintiff and the other Florida Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Florida Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Honda's misrepresentations, fraud, deceptive practices, and omissions.

203.   Honda's violations present a continuing risk to Plaintiff as well as to the general public. Honda's unlawful acts and practices complained of herein affect the public interest.

204.   Accordingly, Honda is liable to Plaintiff and the other Florida Subclass members for damages in an amount to be proven at trial.

## COUNT VIII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (FLA. STAT. ANN. §§ 672.314 AND 680.212)

205.   Plaintiff restates and realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

206.   Plaintiff brings this Count on behalf of himself and all other similarly situated residents of the state of Florida for violations of implied warranty of merchantability under Florida law.

207.   Honda was at all times a "merchant" with respect to motor vehicles under Fla. Stat. Ann. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

208.   With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. Ann. § 680.1031(1)(p).

209.   The Affected Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. Ann. §§ 672.105(1) and 680.1031(1)(h).

- 56 -

210.   A warranty that the Affected Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law, pursuant to Fla. Stat. Ann. §§ 672.314 and 680.212.

211.   The Affected Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

212.   Honda marketed the Affected Vehicles as safe, reliable, and high quality automobiles that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Florida Subclass members' decisions to purchase the Affected Vehicles.

213.   Plaintiff and other Florida Subclass members purchased the Affected Vehicles from Honda, or through Honda's authorized agents for retail sales. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles.

214.   Honda knew or had reason to know of the specific use for which the Affected Vehicles were purchased.

215.   Because of the Fuel Pump Defect, the Affected Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

216.   Honda knew about the defect in the Affected Vehicles, allowing Honda to cure their breach of warranty if it chose to do so.

217.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Florida Subclass members. Among other

- 57 -

things, Plaintiff and other Florida Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Florida Subclass members, and Honda knew of the defect at the time of sale.

218.    Plaintiff and Florida Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

219.    Honda was provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

220.    Accordingly, Honda is liable to Plaintiff and Florida Subclass members for damages in an amount to be proven at trial.

## COUNT IX

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (BASED ON FLORIDA STATE LAW)

221.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

222.    Plaintiff brings this Count on behalf of himself and all similarly situated residents of the state of Florida.

223.    Plaintiff and Florida Subclass members entered into contracts with Honda in connection with the sale of the Affected Vehicles.

224.    Plaintiff and Florida Subclass members gave fair and reasonable consideration and performed all their material obligations under the contracts.

225.    Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

226.    Plaintiff and Florida Subclass members had a reasonable expectation that when they purchased their Affected Vehicles from Honda, the Affected Vehicles

- 58 -

would be free of defects, especially defects that affected the safety and operability of the Affected Vehicles.

227.    Honda made the decision to place inferior low-pressure fuel pumps into the Affected Vehicles without informing Plaintiff and Florida Subclass members that the inferior technology would create a safety defect in the Affected Vehicles.

228.    Plaintiff and Florida Subclass members had no reason to know Honda had placed inferior low-pressure fuel pumps into the Affected Vehicles.

229.    By creating and promoting an automobile with a latent safety defect, Honda breached the covenant of good faith and fair dealing and breached its contractual duty to Plaintiff and Florida Subclass members.

230.    As a direct and proximate result of Honda's breach, Plaintiff and Florida Subclass members suffered damages, including being induced to purchase the defective Affected Vehicles.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully requests that the Court enter judgment in his favor and against Honda, as follows:

A.    Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiff's counsel as Class Counsel;

B.    Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

C.    Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

- 59 -

1       D.     An order requiring Honda to pay both pre- and post-judgment interest on

2  any amounts awarded;

3       E.     An award of costs and attorneys' fees; and

4       F.     Such other or further relief as may be appropriate.

5                 **DEMAND FOR JURY TRIAL**

6  Plaintiff hereby demands a jury trial for all claims so triable.

7

8  Dated: June 10, 2020               Respectfully submitted,

9                           By: /s/ Christopher R. Pitoun

10                           Christopher R. Pitoun (SBN 290235)
   HAGENS BERMAN SOBOL SHAPIRO LLP

11                           301 North Lake Avenue, Suite 203
   Pasadena, CA 91101

12                           Telephone: (213) 330-7150
   Facsimile: (213) 330-7152

13                           Email: christopherp@hbsslaw.com

14

15                           Steve W. Berman (to be admitted *pro hac vice*)
   Thomas E. Loeser (to be admitted *pro hac vice*)

16                           Jerrod C. Patterson (to be admitted *pro hac vice*)
   HAGENS BERMAN SOBOL SHAPIRO LLP

17                           1301 Second Avenue, Suite 2000
   Seattle, WA 98101

18                           Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

19                           Email: steve@hbsslaw.com

20                           Email: toml@hbsslaw.com
   Email: jerrodp@hbsslaw.com

21

22                           Andrew Levetown (to be admitted *pro hac vice*)
   IVEY & LEVETOWN

23                           6411 Ivy Lane, Suite 304
   Greenbelt, MD 20770

24                           Telephone: (703) 618-2264
   Email: asl@iveylev.com

25

26                           *Attorneys for Plaintiff and the Proposed Class*

27

28